IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

PETE TRUJILLO,

    Plaintiff,

vs.                                No. 14-CV-370 MV/KK

RICK ROMERO,
individually and in his capacity
as an officer with the
County of Taos Sheriff's Department,

    Defendant.

## MOTION TO EXTEND DEADLINE FOR EXPERT WITNESS DISCLOSURE

This motion is respectfully filed pursuant to the Court's Order Regarding Motion to Extend Discovery for Limited Purposes (Doc. 36), in which the Court denied without prejudice the part of Defendant's motion seeking an extension of time for his disclosure of an expert witness, and granted him leave to file this motion. See Order (Doc. 36), p. 6.[1]

### Relevant Procedural History

Defendant has proceeded diligently and methodically with discovery in an action in which the parties disclosed approximately thirty potential witnesses.

Defendant served interrogatories and requests for production on Plaintiff on November 27, 2014 and January 21, 2015 (see Docs. 20, 24), and, based on the information obtained, served subpoenas

---

[1] In the pertinent part of his motion, Defendant sought "[t]o disclose an expert witness and produce a report in accordance with Fed.R.Civ.P. 26(a)(2), within 30 days after entry of an order authorizing such disclosure, and, if Plaintiff wishes to do so, allow Plaintiff to depose the designated expert witness and/or disclose his own expert witness on the same subject within 30 days after Defendant's disclosure." See Motion (Doc. 33), p. 1.

for production of documents to Plaintiff's health-care providers (Drs. Baten, Campbell, Franklin, Mash and Steinberg), receiving voluminous records. In addition, Defendant served subpoenas for the production of documents on Holy Cross Hospital in Taos and the Social Security Administration.[2] Between February 9, 2015 and March 26, 2015, Defendant took ten depositions: of the Plaintiff; Pete Trujillo, Jr. (Plaintiff's son); Michelle Mascareñas-Trujillo (Plaintiff's wife and Pete Junior's mother); Destiny Trujillo (Plaintiff's daughter); Doris Martinez (Plaintiff's sister); J.B. Martinez (Plaintiff's brother-in-law); David Martinez (Plaintiff's nephew); Arianna Archuleta (Pete Jr.'s girlfriend, who lived in the house); Dr. Paul Mikkelson; and Dr. Michael Mash. Defendant of his own accord also obtained numerous other documents including Plaintiff's criminal-case records, jail records and various dispatch logs and records, as well as the audiotape of witness statements from the August 27, 2013 incident.[3]

Of the ten depositions he took, Defendant deposed Plaintiff last (on March 26, 2015), after he had gathered and reviewed all of the relevant documents and obtained the deposition testimony of all of the non-law enforcement, non-county third party eyewitnesses. All such witnesses were related to the Plaintiff.

---

[2] These latter two subpoenas are still outstanding, and the Court has extended discovery as to those subpoenas to May 27, 2015 (Doc. 36). On April 24, 2015, however, having reached an apparently irresolvable impasse regarding voluntary compliance, Defendant filed his Motion to Enforce Subpoena (Doc. 35) regarding Holy Cross Hospital's emergency room records for Pete Trujillo Jr.

[3] Plaintiff took only one deposition (Defendant Rick Romero) on March 27, 2015.

The original deadline for identification of expert witnesses (November 24, 2014 for Plaintiff, December 24, 2014 for Defendant) passed prior to either party having taken a deposition. Neither party disclosed an expert witness. See Scheduling Order (Doc. 12), p. 2.

As will be explained below, Defendant was not able to conclude that he needed an expert witness until he deposed Plaintiff. Subsequently, after consulting with his client, he filed his initial motion seeking to disclose an expert on April 3, 2015 (Doc. 33), eight days after he had deposed the Plaintiff and prior to the termination of discovery.

**The Evidence Adduced, and Defendant's Theories of the Case**

This is an action alleging excessive force allegedly perpetrated by Defendant, a Taos County Sheriff's Deputy, against Plaintiff on August 27, 2013, during the course of Plaintiff's arrest on domestic violence charges in Taos, New Mexico including felony child abuse and aggravated assault on a household member. The victim of the domestic violence charges was Pete Trujillo Jr., Plaintiff's 17-year-old son.

The August 27, 2013 arrest was preceded by an altercation between Plaintiff and Pete Trujillo, Jr., which was witnessed by various of Plaintiff's family members who called 911 for help. According to recorded statements given at the crime scene, and statements memorialized by Emergency Medical Service paramedics who responded to the scene, Pete Trujillo Jr. had been "beat up by his father [Plaintiff]" who had struck Pete Jr. with bricks and then

"choked [Pete Jr.] until [he] passed out." Family witnesses reported that after being choked by Plaintiff, Pete Trujillo Jr. had been unconscious for approximately one and a half minutes; and in recorded statements, they stated Pete Jr. had turned purple. See Exhibit A, attached hereto. According to their contemporaneously recorded statements, the family members were forced to choke and hit Plaintiff in order to stop him from continuing his attack on his son. After the family called 911, Plaintiff had attempted to flee the scene but was unsuccessful, because his family members had blocked his truck with rocks.

Plaintiff testified that after officers arrived on scene, he had been handcuffed and placed on the rear seat of a patrol unit, while the officers took statements from the victim and witnesses. Plaintiff testified that he was savagely beaten by Defendant, twice, while he was handcuffed and leg-shackled and having a seizure in the back seat of the vehicle, without cause or reason. The jail records signed by Plaintiff after his arrest reflected *inter alia* that he did not have any medical problems and was not in pain, bleeding, or in need of emergency medical services, and did not have any visible signs of trauma, illness or physical injuries. See Deposition Ex. 29, attached hereto as Exhibit B. Plaintiff did not exhibit visible injuries at the emergency room where he was taken for a pre-incarceration clearance due to his intoxication, and did not mention having had a seizure. See Exhibit C.

During their depositions, Plaintiff's family members testified about having witnessed the beating (giving very different versions

of exactly what had occurred). In addition, Plaintiff's family including Michelle Trujillo, Pete Jr. and Arianna Archuleta disavowed their contemporaneously recorded statements they'd made to law enforcement officers and the statements they made to EMTs; in general, they testified that the August 27, 2013 incident had been Pete Jr.'s fault and that Plaintiff in fact never hit Pete Jr. (instead merely giving him a friendly "bear hug"). They testified under oath that notwithstanding their on-scene statements, Plaintiff had not choked Pete Jr. and Pete Jr. never lost consciousness. See Exhibit D (excerpts from depositions).

At the time of their depositions, Michelle Trujillo, Pete Jr. and Arianna Archuleta were living with Plaintiff in the same home.

It is Defendant's theory of the case that Plaintiff was not, in fact, savagely beaten up by Defendant, for no apparent reason, in full view of other officers, paramedics and Plaintiff's family (the latter of whom agreed during their respective depositions that they had said nothing about the beating as it occurred).

It also is Defendant's theory of the case that the reason why the witnesses (Michelle Trujillo, Pete Jr. and Arianna Archuleta and some other family members) recanted their on-scene statements was that, as victims of domestic violence perpetrated by Plaintiff, they were afraid. In April 2014, Defendant was arrested again for domestic violence against his wife Michelle, in a case involving an AK-47 firearm.[4] In setting a $50,000 cash-only bond, subsequently

---

[4] The arrest was made by New Mexico State Police officers and included a variety of charges including felony child abuse against his children Josephita Trujillo and Fernando Trujillo, and

reduced to $40,000 cash only, the Magistrate Court found that Plaintiff was a "[d]anger to the community" and specifically, to the victims. The Magistrate Court imposed a restraining order requiring Plaintiff to have "no contact" with his wife Michelle or any of his children, and to stay 500 feet away from Michelle Trujillo's residence (where Plaintiff lived along with Pete Trujillo Jr., Arianna Archuleta, and others) and her place of work. Eventually, according to the evidence, the restraining order was lifted, and Plaintiff returned to the home where he was living at the time of the depositions. See Exhibit E, attached hereto.

The situation (and the theory of evidence involving the motivations of Michelle, Pete Jr., Arianna and others) did not become apparent to undersigned counsel until he took the deposition of Plaintiff, and was able for the first time to observe Plaintiff's demeanor and attitude towards Michelle, Pete Jr. and Arianna when Plaintiff learned that they previously had made statements to law enforcement officers and emergency medical staff to the effect, *inter alia*, that Plaintiff had attacked and beaten Pete Jr. and had choked Pete Jr. until he had turned purple and lost consciousness. Plaintiff testified that the statements made on-scene by his family were "lies" and a "bunch of bullshit" and "false" and "very disgusting" and that it was "getting [him] sick" and that he felt like moving out of the house and that he was going to talk to witnesses about the statements and conduct being

---

attempted battery against a household member, his wife Michelle, and negligent use of a firearm while under the influence of an intoxicant or narcotic. See Exhibit E.

-6-

attributed to him. <u>See</u> Exhibit F, attached hereto. It was then, after reviewing the previous depositions, considering the demeanor and testimony of Plaintiff and his family, that Defendant determined his theory of why the family may have testified as they did, blaming victim Pete Jr. for causing the violent attack by perpetrator Plaintiff, supporting Plaintiff's version of events, and testifying contrary to their previous, contemporaneous, recorded statements to police, paramedics and, on information and belief, to the emergency room physician and nurse.

**Good Cause for the Proposed Expert Witness Disclosure**

Defendant of course recognizes that Plaintiff has a very different of events than that presented herein. Obviously, it will be up to the jury to decide who is telling the truth and why Michelle Trujillo, Pete Jr. and Arianna have recanted their contemporaneous statements implicating Plaintiff in a brutal attack on his seventeen-year-old son Pete Jr. which allegedly caused him to lose consciousness, and led the family to call 911 for help. The jury will decide whether, in fact, Defendant beat up Plaintiff for no reason.

Under the circumstances, however, Defendant should be permitted to disclose an expert witness to provide the jury with insights regarding victims of domestic violence and their families and how they may act in relation to the perpetrator, especially ones with whom they continue to reside after the immediate threat has abated. On information and belief, such an expert witness might explain the research and experience regarding the

-7-

psychological and physical dynamics of such situations, including the victim's need for self-preservation, post-act minimization of the act of domestic violence, post-act realignment of interests, post-incident rejection of outside help and intervention, etc.[5]

The Court in its Order (Doc. 36) has discussed the standards for modification of a scheduling order and extension of discovery, which amounts to "good cause" within the meaning of Strope v. Collins, 315 F.App'x 57, 61 (10th Cir. 2009) (moving party must show diligence in attempting to meet deadlines and must "provide an adequate explanation for any delay") and Smith v. United States, 832 F.2d 166, 169 (10th Cir. 1987)(six factors).

Defendant believes he has demonstrated good cause, rather than excusable neglect within the meaning of Fed.R.Civ.P. 6(b)(1)(B), since he does not believe, under the circumstances of the case, that he was neglectful.

The six factors discussed by the Smith court are as follows.

1. Whether trial is imminent. There is no trial date set.

2. Whether the request is opposed. The request is opposed.

3. Whether the non-moving party would be prejudiced. Defendant submits that there would be no prejudice to Plaintiff if the Court granted the instant motion, since the movant is requesting the Court to allow Plaintiff the right to depose the expert witness within 30 days after disclosure and/or to designate

---

[5] If the Court grants the instant motion, Defendant anticipates that he would disclose Douglas S. Southern, Ph.D., Director of Clinical Services of Roswell Refuge for Battered Adults and a licensed psychologist and clinical mental health counselor.

his own expert witness. The situation would really be no different from Plaintiff's perspective than if the expert witness had been disclosed by the initial deadline. Defendant's defense, however, would be prejudiced by not having the testimony of the expert, because the jury will not be provided with an appropriate context within which to evaluate the Trujillo family dynamics.

4.  **Whether the moving party was diligent in obtaining discovery within the guidelines established by the Court.** Defendant respectfully suggests that, as set forth herein, he has obtained discovery in a diligent, logical and methodical manner, including his decision to depose Plaintiff only after obtaining and reviewing the voluminous relevant documentation and taking the depositions of all family eyewitnesses. As previously explained, the need for the expert witness did not become apparent to undersigned counsel until he took the deposition of the Plaintiff and was able to hear his testimony and observe his demeanor and attitude towards his family members upon learning (apparently for the first time) about their contemporaneous, on-scene statements to law enforcement officers and emergency medical personnel. Defendant filed his motion eight days later. See Doc. 33.

5.  **The foreseeability of the need for additional discovery in light of the original time allowed for discovery.** This factor is discussed in Factor No. 4, above.

6.  **The likelihood that the discovery will lead to relevant evidence.** Defendant submits that the proposed disclosure of the requested expert witness clearly will lead to relevant evidence, as

argued herein.  The request is in no way a mere fishing expedition. In addition, Plaintiff will have ample opportunity at trial to challenge the admissibility of the testimony.

WHEREFORE, for the reasons set forth herein, Defendant respectfully moves the Court for an order allowing Defendant to disclose an expert witness and produce a report in accordance with Fed.R.Civ.P. 26(a)(2) within 30 days after entry of an order authorizing such disclosure, and, if Plaintiff wishes to do so, allow Plaintiff to depose the designated expert witness and/or disclose his own expert witness on the same subject within 30 days after Defendant's disclosure.

Respectfully submitted,

/s/ **Michael Dickman**
**MICHAEL DICKMAN**
Post Office Box 549
Santa Fe, NM 87504
(505) 989-9360
**Attorney for Defendant**


## CERTIFICATE OF SERVICE

I certify that I caused a true copy of this motion
to be electronically served on
Samuel M. Herrera, Esq.
on the date of filing hereof
at his email address as registered on CM/ECF

/s/ **Michael Dickman**
**MICHAEL DICKMAN**